**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
AT LEXINGTON**

**CIVIL ACTION NO. 20-104-DLB**

**ANITA LYNN STAMPER,** *Executor of*
the Estate of Michael Lane Hatton                                                   **PLAINTIFF**


**v.**                            **MEMORANDUM OPINION AND ORDER**


**ANDREW SAUL, Commissioner**
of the Social Security Administration                                                **DEFENDANT**

\* \*   \* \*   \* \*   \* \*   \* \*   \* \*   \* \*   \* \*

  This matter is before the Court on Plaintiff Anita Lynn Stamper's Motion for Summary Judgment, (Doc. # 14), pursuant to 42 U.S.C. § 405(g), which allows Plaintiff to obtain judicial review of an administrative decision by the Commissioner of Social Security. Plaintiff Anita Lynn Stamper is the Executor of the Estate of Michael Lane Hatton, who is the subject of the underlying administrative decision by the Commissioner of Social Security. Defendant Andrew Saul, Commissioner of the Social Security Administration, filed a Cross Motion for Summary Judgment. (Doc. # 18). The Court, having reviewed the administrative record and the parties' motions, and for the reasons set forth herein, **affirms** the Commissioner's decision.

**I.     FACTUAL AND PROCEDURAL BACKGROUND**

  On July 18, 2012, Michael Lane Hatton filed an application for Disability Insurance Benefits under Title II of the Social Security Act, alleging disability as of July 15, 2002. (Tr. 159). Hatton was fifty-one years old at the onset of the alleged disability that rendered him unable to work, but at the time of filing, Hatton was sixty-one. (*Id.*). Hatton's

1

application was denied initially on October 8, 2012, (Tr. 71-72), and upon reconsideration on January 14, 2013, (Tr. 82-83). At Hatton's request, (Tr. 95), an administrative hearing was conducted, (Tr. 27-65), and on July 16, 2014, Administrative Law Judge ("ALJ") Ronald Kayser found that Hatton was not disabled under the Social Security Act and, therefore, not entitled to benefits. (Tr. 9-26). The decision became the final decision of the Commissioner on February 3, 2016 when the Appeals Council denied Hatton's request for review. (Tr. 1-6).

Prior to the final decision, Hatton died in December of 2015. (Tr. 1363). Following Hatton's death, Anita Stamper, the Executor of Hatton's estate, sought judicial review in the Eastern District of Kentucky. (Tr. 1210-1219). District Judge Joseph Hood granted the Commissioner's Motion for Summary Judgment, (Tr. 1220-1230), which Stamper appealed, (Tr. 1231). On appeal to the Sixth Circuit, the Commissioner moved for remand under sentence four of 42 U.S.C. § 405(g), which Plaintiff did not oppose. (Tr. 1232). The Sixth Circuit granted the Commissioner's motion to remand, which vacated Judge Hood's previous ruling. (*Id.*).

On remand, the Appeals Council vacated its previous final decision and remanded the case to an Administrative Law Judge to resolve the remaining issues. (Tr. 1237-1238). On October 23, 2019, an administrative hearing was conducted, (Tr. 1138-1185), and on November 18, 2019, ALJ Kendra Kleber again found that Hatton was not disabled and therefore not entitled to benefits. (Tr. 1116-1137). That decision represents the final decision of the Commissioner of Social Security. *See* 20 C.F.R. § 404.984.

## II.     DISCUSSION

### A.     Standard of Review

Judicial review of the Commissioner's decision is restricted to determining whether it is supported by substantial evidence and was made pursuant to proper legal standards. *See Colvin v. Barnhart*, 475 F.3d 727, 729-30 (6th Cir. 2007) (citing *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997)). "Substantial evidence" is defined as "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citing *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981)). Courts are not to conduct a de novo review, resolve conflicts in the evidence, or make credibility determinations. *Id.* (citing *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984)). Rather, the Court must affirm the Commissioner's decision as long as it is supported by substantial evidence, even if the Court might have decided the case differently. *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999) (citing *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). In other words, if supported by substantial evidence, the Commissioner's findings must be affirmed even if there is evidence favoring Plaintiff's side. *Id.*; *see also Listenbee v. Sec'y of Health & Human Servs.*, 846 F.2d 345, 349 (6th Cir. 1988). In determining whether the Commissioner's conclusion is supported by substantial evidence, courts "must examine the administrative record as a whole." *Cutlip*, 25 F.3d at 286.

### B. The ALJ's Determination

To determine disability, an ALJ conducts a five-step analysis. *Walters*, 127 F.3d at 529. Under Step One, the ALJ considers whether the claimant is engaged in substantial gainful activity; Step Two, whether any of the claimant's impairments, alone or in combination, are "severe"; Step Three, whether the impairments meet or equal a listing in the Listing of Impairments; Step Four, whether the claimant can still perform his past relevant work; and Step Five, whether a significant number of other jobs exist in the national economy that the claimant can perform. *See id.* (citing 20 C.F.R. § 404.1520). The burden of proof rests with the claimant for Steps One through Four. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003) (citing *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987)). At Step Five, the burden of proof "shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity." *Id.* (citing *Bowen*, 482 U.S. at 146 n.5).

Here, at Step One, the ALJ found that Hatton had not engaged in substantial gainful activity after July 15, 2002, the onset date of Plaintiff's alleged disability, through his date last insured, June 30, 2007.[1] (Tr. 1122-1123). At Step Two, the ALJ determined that Hatton had the following severe impairments: obesity, ischemic heart disease, peripheral arterial disease, and diabetes mellitus. (*Id.* 1123). At Step Three, the ALJ determined that Hatton did not have any impairment or combination of impairments that meet or medically equal the severity of any of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1, through the date last insured. (Tr. 1124).

---

[1] The ALJ did not include the correct alleged onset date in Step One, but it is clear from the record that July 15, 2002, is the correct alleged disability onset date.

The ALJ then determined that Hatton possessed the residual functional capacity ("RFC") to perform "medium work" as defined in 20 C.F.R. § 404.1567(c), "except he must avoid concentrated exposure to extreme cold or extreme heat." (Tr. 1125). "Medium work" is defined as being able to "lift[] no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. § 404.1567(c). The ALJ concluded at Step Four that Hatton was unable to perform any past relevant work through the date last insured. (Tr. 1129).

At Step Five, the ALJ concluded that due to Hatton's age, education, work experience, and RFC, there were jobs that he was able to perform in the national economy through the date last insured. (Tr. 1130). Based on the opinion of a Vocational Expert ("VE"), the ALJ determined that Plaintiff could engage in medium unskilled occupations, such as a Machine Feeder, Packer, or Warehouse Worker. (Tr. 1130-1131). Accordingly, the ALJ concluded that Plaintiff was not disabled as defined by the Social Security Act at any time from July 15, 2002, the alleged onset date, through June 30, 2007, the date last insured. (Tr. 1131).

**C.    Analysis**

In Plaintiff's Memorandum in Support of her Motion for Summary Judgment, she argues that the ALJ improperly concluded that Hatton could do "medium work" without substantial basis in the record, and that the ALJ did not consider Hatton's impairments in combination as required when determining his residual functional capacity. (Doc. # 14-1 at 1). The Court disagrees.

Plaintiff's general assertion is that the ALJ failed to consider the entirety of the record when making the determination on Hatton's disability. (*Id.* at 14-1 at 7). Plaintiff

5

contends that the ALJ's decision that Hatton could perform "medium work" was entirely dependent on the opinion of Dr. Carlos Hernandez, a state agency physician, who did not possess Hatton's medical records.  (*Id.* at 7).  Additionally, Plaintiff argues that the ALJ's evaluation failed to analyze how Hatton's impairments, or combination of impairments, would affect Hatton's residual functional capacity ("RFC").  (*Id.* at 8).  Generally, both of Plaintiff's complaints relate to the ALJ's determination of Hatton's RFC.  However, for the reasons explained below, the Court finds that the ALJ's determination of Plaintiff's RFC was supported by substantial evidence in the record.

RFC refers to "the most [the claimant] can do despite [his] limitations" and should be assessed "based on all the relevant evidence in [the] case record."  20 C.F.R. § 404.1545(a)(1).  Determining a claimant's RFC begins with an assessment of his "impairment(s), and any related symptoms, such as pain, [which] may cause physical and mental limitations that affect what [the claimant] can do in a work setting."  *Id.*  This includes an evaluation of "statements about what [the claimant] can still do that have been provided by medical sources," as well as statements by the claimant or other persons which describe the claimant's "limitations from [his] impairment(s), including limitations that result from [the claimant's] symptoms, such as pain."  20 C.F.R. § 404.1545(a)(3).  So long as an ALJ's determination of disability is supported by substantial evidence in the record, the Court will affirm.  *Her*, 203 F.3d at 389-90 (citing *Key*, 109 F.3d at 273).

Plaintiff first argues that the ALJ's determination that Hatton could perform "medium work" was unsupported by the medical record.  (Doc. # 14-1 at 9-10). Specifically, Plaintiff contends that there is no medical evidence supporting that Hatton could lift and carry 50 pounds, could frequently lift and carry 25 pounds, or could stand

six hours per day due to his peripheral artery disease. (*Id.* at 9). Plaintiff argues that the only opinion supporting Hatton's ability to perform "medium work" is that of state agency physician, Dr. Carlos Hernandez. (*Id.* at 9). Hernandez's opinion opines that Plaintiff can perform "medium work" as of the last date insured including, standing or walking for up to 6 hours in an 8 hour workday. (Tr. 80). In his opinion, Hernandez found that Hatton's complaints of limitations "bending, standing, walking, kneeling . . . [were] not supported by objective findings and considered not credible." (Tr. 81). Similarly to Hernandez, another state agency physician, Shirley Dillmann, found that Hatton's peripheral artery disease was non-severe. (Tr. 71). Hatton's arterial Doppler exam, performed in October of 2002, resulted in a finding that Hatton had "mild atherosclerotic obstructive disease in the right [and left] upper thigh," and his peripheral artery disease was "becoming more moderate below the left knee." (Tr. 1056-1058). Dr. Gordon Guthrie, who previously treated Hatton, noted that Hatton had "intermittent aching calf pain on walking, which ceases on rest." (Tr. 1059-1060).

In determining Hatton's RFC, the ALJ gave the opinions of the state agency physicians "great weight" because she found them to be consistent with the underlying medical record. (Tr. 1126-1127). Specifically as to Hatton's peripheral artery disease, the ALJ opined:

> An arterial Doppler examination was completed in October 2002 that indicated mild artherosclerotic obstructive disease in the bilateral upper thighs distally and becoming more moderate below the left knee. However, the medical evidence does not provide any evidence that the mild and moderate findings resulted in severe limitations in Mr. Hatton's ability to stand or walk, and Dr. Gordon Guthrie reported the condition appeared to be intermittent. The onset also appears to have been acute because the longitudinal evidence does not show any further complaints involving leg cramps until August of 2006 when he told Dr. Ferguson that he could walk a city block before needing to rest. Again, however, the record at that time

7

> is void of any diagnostic evidence to establish the severity of leg cramps. Moreover, Mr. Hatton did not again complain of leg cramps for almost another two years until May 2008; 10 months after the date last insured.

(Tr. 1127) (internal citations omitted).  The ALJ further found persuasive that Plaintiff did not report severe complaints to his treating physicians, and the complaints he did report were "dramatically less severe than that which he described at the first hearing."  (Tr. 1128).  While Plaintiff claims that "nothing in the medical record" supports a RFC of "medium work," that is patently untrue.  (*See* Doc. # 14-1 at 9).  The ALJ clearly evaluated a number of physician's opinions, treatment records, including the Doppler examination, regarding Plaintiff's peripheral artery disease.  While Plaintiff points to other evidence in the record, some after Hatton's date last insured, which could support a more restricted RFC finding, it is not within this Court's purview to resolve conflicts of evidence.  *See Cutlip*, 25 F.3d at 286.  The Court is similarly required to uphold the decision of the ALJ so long as there is substantial evidence in the record, even if the Court itself would find differently.  *Her*, 203 F.3d at 389-90.

In Hatton's medical records, there is documentation that his peripheral artery disease was non-severe, and would not impact his ability to perform at the "medium work" level, and there is similarly documentation that it could potentially call for a more restrictive RFC.  However, none of the records, outside of Hernandez's opinion, opine to what level of work Hatton could perform on a regular basis.  Still, the ALJ took the entirety of the medical record into account, clearly explained her findings and supporting evidence, and came to the conclusion that Hatton could perform "medium work."  Although a different conclusion may have also been appropriate, there is substantial evidence supporting the ALJ's conclusion.  Unfortunately for Plaintiff, "[i]f supported by substantial evidence, the Commissioner's decision must be affirmed . . . even if the claimant's position is also

8

supported by substantial evidence." *Linscomb v. Comm'r of Soc. Sec.*, 25 F. App'x 264, 266 (6th Cir. 2001) (citing *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001)).

Similarly, Plaintiff next argues that the ALJ failed to consider Hatton's impairments in combination in determining his RFC. (Doc. # 14-1 at 11). In assessing RFC, the ALJ is required to assess "*all* of claimant's impairments." *Glenn v. Comm'r of Soc. Sec.*, 763 F.3d 494, 499 (6th Cir. 2014). The Social Security regulations, namely 20 C.F.R. § 404.1545(e), describes what the ALJ should take into account: "we will consider the limiting effects of all your impairment(s), even those that are not severe, in determining your residual functional capacity." If the claimant has multiple impairments, the ALJ "will consider the combined effect of all of your impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity." 20 C.F.R. § 404.1523(c). Generally, the ALJ should "consider the combined impact of impairments throughout the disability determination process." *Id.* Plaintiff finds issue with the ALJ's evaluation, which "addressed the impairments individually" and "made no effort to consider how the *combination* of Mr. Hatton's impairments may have affected his functional capacity." (Doc. # 14-1 at 12-13) (emphasis in original). However, a reading of the ALJ's opinion demonstrates otherwise.

The ALJ went through a deliberate, step-by-step account of Hatton's severe and non-severe impairments. (Tr. 1124-1129). Specifically, the ALJ evaluated the limitations "imposed by all of the claimant's impairments, *individually and in combination*, to consider the question of whether there was work that he was able to perform which existed in substantial numbers in the national economy." (Tr. 1125) (emphasis added). The ALJ further discussed Hatton's obesity, cardiovascular impairments, peripheral artery

9

disease, coronary artery disease, diabetes,[2] peripheral vascular disease, Plaintiff's reports to treating physicians, other medical opinions in the record, and statements from third-party witnesses. (Tr. 1127-1128). Unfortunately for Plaintiff, "[a]n ALJ's individual discussion of multiple impairments does not imply that [she] failed to consider the effect of the impairments in combination, *where the ALJ specifically refers to a "combination of impairments" in finding that the plaintiff does not meet the listings*." *Loy v. Sec'y of Health & Hum. Servs.*, 901 F.2d 1306, 1310 (6th Cir. 1990) (citing *Gooch v. Sec'y of Health & Hum. Servs.*, 833 F.2d 589, 592 (6th Cir. 1987)). Here, ALJ Kleber did just that. (Tr. 1125).

Finally, Plaintiff contends that the ALJ used "boilerplate language" in determining that Hatton's allegations of symptoms were not consistent with the underlying medical evidence. (Doc. # 14-1 at 13). Specifically, Plaintiff finds issue with the below discussion:

> After careful consideration of the evidence, I find that Mr. Hatton's medically determinable impairments could possibly cause some of the alleged symptoms; however, his statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the evidence, and the resulting limitations were not sufficiently severe to preclude him from performing substantial gainful activity on a sustained basis.

(Tr. 1128-1129). In viewing the entirety of the ALJ's decision, it becomes clear that any argument that the ALJ did not appropriately assess Hatton's credibly fails. On the same page that the ALJ makes the above determination, she explains that Hatton's reports to

---

[2] Plaintiff also argues that the ALJ did not consider Social Security Ruling 14-2p, Section II.D.2, when evaluating Hatton's diabetes. (Doc. # 14-1 at 11-13). Again, this is demonstrably false. SSR 14-2p states: [t]he combined effects of DM and another impairment(s) can be greater than the effects of each of the impairments considered separately. We consider all work-related physical and mental limitations, whether due to an adult's DM, other impairment(s), or combination of impairments." 2014 WL 2472008, at *6 (2014). The ALJ acknowledged that she must consider whether Hatton's diabetes "affected any of the claimant's other body systems," and then determined it had not. (Tr. 1125).

10

his treating physicians were inconsistent with his testimony at his first disability hearing. (Tr. 1128). It is well established that "[c]onsistency between a claimant's symptom complaints and the other evidence in the record tends to support the credibility of the claimant, while inconsistency, although not necessarily defeating, should have the opposite effect." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 248 (6th Cir. 2007). The ALJ clearly evaluated Hatton's complaints of symptoms, but ultimately determined they were inconsistent with the underlying medical record. This Court will not reevaluate credibility determinations of the ALJ as they are "entitled to considerable deference." *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 242 (6th Cir. 2002).

Ultimately, the Court declines to reevaluate evidence already considered by the ALJ, as substantial evidence supported her decision as to Hatton's RFC and disability determination. For this reason, remand is not appropriate.

## III. CONCLUSION

Accordingly, for the reasons stated herein, **IT IS ORDERED** as follows:

(1) The decision of the Commissioner is supported by substantial evidence and is hereby **AFFIRMED**;

(2) Plaintiff's Motion for Summary Judgment (Doc. # 14) is hereby **DENIED**;

(3) The Commissioner's Motion for Summary Judgment (Doc. # 18) is hereby **GRANTED**;

(4) This civil action is hereby **DISMISSED** and **STRICKEN** from the Court's active docket; and

(5) A Judgment in favor of Defendant Commissioner will be entered contemporaneously herewith.

This 7th day of September, 2021.



M:\DATA\SocialSecurity\MOOs\Lexington\5-20-104 Stamper MOO.docx